IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | : | |
|---|---|---|
| SEVERN MARKETING ASSOCIATES, | : | |
| INC. d/b/a Delmarva Engineering | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-09-3295 |
| SHARON O. DOOLIN | : | |
| | : | |
| | : | |

...o0o...

## MEMORANDUM

Now pending before the court is a motion to dismiss filed by defendant Sharon O. Doolin. Plaintiff Severn Marketing Associates, Inc. d/b/a Delmarva Engineering ("Delmarva") has sued Doolin, seeking compensatory damages, punitive damages and injunctive relief as well as interest, costs and attorney's fees. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the defendant's motion to dismiss will be granted in part and denied in part.

## BACKGROUND

Delmarva has alleged the following facts.[1] Delmarva, a Maryland corporation, is a manufacturers' representative organization ("MRO"). (Am. Compl. ¶5.) MROs provide sales and marketing services to manufacturing companies, which in the industry are called "Principals," within a specified geographic territory. (*Id*. ¶5.) Delmarva specializes in representing manufacturers in the aerospace and electronics industries. (*Id*. ¶5.)

---

[1] Delmarva urges the court to treat Doolin's motion to dismiss as a motion for summary judgment, and has submitted affidavits to that end. Doolin, however, objects. As there has been no sufficient opportunity for discovery, the motion will not be converted to one for summary judgment.

1

On or about August 17, 1997, Delmarva hired Doolin as a manufacturer's representative salesperson. (*Id.* ¶6). Her responsibilities included marketing and selling products of each of Delmarva's Principals in her territory, which covered Maryland, Virginia, North Carolina and the District of Columbia. (*Id.*)[2] In 2008, Delmarva entered into an employment agreement with Doolin that contained the following restrictive covenant:

> 7.01 Covenant Not to Compete. Employee agrees that he or she will not (a) directly or indirectly (either for his or her benefit or the benefit or [sic] any other entity) solicit, call on, interfere with, or attempt to divert, entice away, sell or market for any Principal during the No Comptetition [sic] Period, (b) accept or receive compensation of any kind from any company engaged in manufacturers' representation in the Territory of products that are competitive to Delmarva's Principals at the time of termination.

(*Id.* ¶7, Ex. A.) The Doolin Agreement defines the relevant terms as follows: "'Principal' means a manufacturer that manufactures Products sold, marketed or distributed by Delmarva to End Users"; "'Territory' means the District of Columbia and the states of Maryland, Virginia, and North Carolina"; and "'No Competition Period' means . . . the 12-months [sic] immediately following the expiration or earlier termination of this Agreement.'" (*Id.*, Ex. A, §§ 1.01 (10), (13), and (8)). Doolin agreed to abide by the Restrictive Covenants contained in the Agreement, including the non-compete clause, in exchange for a ten-percent increase in the commissions she would receive from moneys paid to Delmarva. (*Id.* ¶¶8-9.) The Agreement included a choice-of-law clause designating Maryland law as governing the Agreement. (*Id.*, Ex. A, §10.05.)

Doolin resigned from Delmarva on or about June 23, 2009. (*Id.* ¶13.) Delmarva alleges that after Doolin resigned, she proceeded to violate both sections of the non-compete provision by the following acts, among others: defaming Delmarva to its Principal, Natel Engineering, and

---

[2] A court, in considering whether a plaintiff's complaint states a claim for which relief can be granted, must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). For the purposes of evaluating Doolin's motion to dismiss, the court will assume that Delmarva alleges that during her employment at Delmarva, Doolin provided services in some capacity to most or all of Delmarva's Principals, rather than only a subset of those Principals.

to a customer of Natel and Delmarva; working for MicroLambda, an MRO operating in the same Territory as Delmarva and for Principals in the same industry as Delmarva's Principals; and disclosing confidential information belonging to Delmarva. (*Id.* ¶11.)

Delmarva filed suit against Doolin in the Circuit Court of Maryland for Anne Arundel County on October 30, 2009, alleging breach of contract, defamation, tortious interference with economic relations, and unjust enrichment. Doolin removed the case to federal court on December 11, 2009. Doolin moved to dismiss the complaint on January 13, 2010, a motion this court denied as moot after Delmarva filed an amended complaint on February 1, 2010, adding a claim for intentional interference with contractual relations to the four claims included in the original complaint. Defendant Doolin then moved to dismiss the amended complaint on February 22, 2010.

## **ANALYSIS**

### **I.  Standard of Review**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against

him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## II.     Breach of contract (Count I)

Doolin asserts that Delmarva's complaint does not state a cause of action for breach of contract, for four reasons. First, she argues the restrictive covenant is invalid and unenforceable on its face, and thus cannot form the basis of a claim for contractual damages. Second, she argues that even if the covenant is valid and enforceable, Delmarva does not state a cause of action for breach because the covenant does not prohibit defamation or disparagement. Third, again assuming the enforceability of the covenant, she argues the complaint does not allege that Doolin received "compensation" from MicroLambda, as required by part (b) of the covenant, but rather simply that she was "working for MicroLambda." (Am. Compl. ¶11.) Fourth, she argues that Delmarva's remaining allegations are too "conclusory" to meet the pleading requirements of the Federal Rules.

4

### A. *Validity of the restrictive covenant*

Restrictive covenants in employment contracts are restraints on trade, and to be valid they must be reasonable. *Ruhl v. Bartlett Tree Co.*, 225 A.2d 288, 291 (Md. 1967). One typical form of such restrictive covenants is a covenant not to compete. In Maryland, a covenant not to compete may be sustained only if "the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." *Id.*; *see also Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990).

An employer has a "protectable interest," which may support a covenant not to compete, in preventing an employee "from using the contacts established during employment to pirate the employer's customers" after the employment has ended. *Holloway*, 572 A.2d at 515. That interest is especially strong "for businesses in which the personal contacts between the employee and the customer are an important element determining the business's success." *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 639 (D. Md. 1998). An employer does not have a "protectable interest" when the former employee "does no more than become an efficient competitor of his former employer, and does not do so by exploiting his personal contacts with customers or clients of his former employer." *Silver v. Goldberger*, 188 A.2d 155, 159 (Md. 1963). The "protectable interest" requirement thus turns on whether the covenant is directed at precluding the exploitation of personal contacts with customers or clients.

Examined under these factors, a non-compete clause may be void either on its face or as applied. If the scope of a particular covenant is not unreasonable on its face, it may still be void, if, in determining enforceability, other facts and circumstances reveal that the clause is unreasonable. *Millward v. Gerstung Int'l Sport Educ., Inc.*, 302 A.2d 14, 16 (Md. 1973) ("[A]

5

determination of enforceability should be made based on the scope of each particular covenant itself, and, if that, on its face, is not too broad, the facts and circumstances of each case must be examined.") Such "facts and circumstances" may include, for example,

> whether the restriction is reasonable in area and duration, the hardships its enforcement might impose on the employee, the interests of the public, and whether the employee sought to be enjoined performs unique services, is soliciting customers, using trade secrets, assigned routes, customer lists, or is exploiting personal contacts established between the employee and his customers during his employment.

*Id.*; *see also Budget Rent A Car of Wash., Inc. v. Raab,* 302 A.2d 11, 13 (1973) ("While on its face, the covenant here is reasonable as to both time and space, other circumstances present in this case make the restriction unenforceable.").

The non-compete clause in the Doolin Employment Agreement includes two parts. Part (a), hereinafter the "solicitation clause," states that Doolin may not "directly or indirectly (either for his or her benefit or the benefit or [sic] any other entity) solicit, call on, interfere with, or attempt to divert, entice away, sell or market for any Principal during the No Comptetition [sic] Period." (Am. Compl., Ex. A, § 7.01.) Part (b), hereinafter the "competition clause," states that Doolin may not "accept or receive compensation of any kind from any company engaged in manufacturers' representation in the Territory of products that are competitive to Delmarva's Principals at the time of termination." (*Id.*) In essence, the solicitation clause bars the solicitation of existing Delmarva clients or otherwise interfering with Delmarva's relationships with its Principals; the competition clause bars the receipt of compensation from competitor MROs, that is, other MROs in the territory that represent Principals that compete with Delmarva's Principals. Doolin challenges these restrictions, arguing that each is unenforceable on its face.[3]

---

[3] In addition to challenging the enforceability of the covenant not to compete, Doolin also challenges the enforceability of the damages provision of the Employment Agreement, which provides that in the event Doolin

### i. *The solicitation clause*

Doolin argues that the solicitation clause is unreasonable on its face because it prohibits Doolin from diverting or soliciting "any Principal," rather than only those specific Principals "for whom Doolin worked and with whom Doolin presumably had relationships." (Def.'s Mem. at 13.) It is true that Maryland courts generally disfavor agreements that restrict former employees from dealing with all clients of a former employer, rather than limiting the restriction to clients with whom the former employee worked directly. *See, e.g.*, *Holloway v. Faw, Casson Co.*, 78 Md. App. 205, 552 A.2d 1311, 1319 (Md. Ct. Spec. App. 1989), *rev'd in part on other grounds*, 319 Md. 324, 572 A.2d 510 (1990) (holding unreasonable an agreement barring the former employee from contacting any former clients, whether or not he had actually dealt with those clients during his employment). But it is also true that Maryland courts have upheld restrictive covenants that bar solicitation of all clients of a former employer, so long as the restriction is reasonable when considering all the facts and circumstances. *See, e.g.*, *Gill v. Computer Equip. Corp.*, 292 A.2d 54, 59 (Md. 1972) (permitting enforcement of restrictive covenant that barred solicitation of all customers of the division in which the former employee had worked for two years), *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 246 A.2d 588, 589 (Md. 1968) (permitting enforcement of covenant that barred former employee from "engaging either directly or

---

violated the covenant not to compete, she would "forfeit . . . her right to commissions that have been earned but not yet paid and . . . she will not be entitled to payment of any commissions (other than commissions on amounts that were actually paid to Delmarva prior to termination) after the date of his or her termination." (Am. Compl., Ex. A, §6.04.) Doolin argues that the damages provision violates the Maryland Wage Payment and Collection Act ("WPCA"), which requires that an employer "pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Labor and Employment Code Ann. § 3-505(a) (2009). Doolin's argument, however, is premature. Delmarva seeks various forms of relief, including injunctive relief, in addition to damages. Therefore, even if the WPCA arguably could limit the damages available if Delmarva succeeds in proving its claim for breach of contract, section 3-505(a) of the Act does not provide a basis for dismissing the claim at this stage.

indirectly, in any insurance activities with customers" of the plaintiff, an insurance broker, for two years).

While it is conceivable that Doolin could present evidence that restricting Doolin from soliciting any Delmarva Principal renders the agreement overbroad, that determination would turn on a variety of facts and circumstances. Unlike in *Deutsche Post Global Mail, Ltd. v. Conrad*, 292 F. Supp. 748 (D. Md. 2003), where it was undisputed that the former employee had contact with only a fraction of the company's global client base, *id.* at 755, Delmarva alleges that Doolin had contact with all of Delmarva's sixteen Principals during the period of her employment. (Am. Compl. ¶6.) Moreover, Delmarva alleges that Doolin "attempt[ed] to divert" the Principals with whom Doolin worked while at Delmarva, precisely the type of employer interest Maryland courts have deemed protectable by restrictive covenants. *See, e.g.*, *Silver v. Goldberger*, 188 A.2d at 159. To succeed in challenging the enforceability of the solicitation clause on the grounds that it applies to too many Principals, Doolin likely would have to make a factual showing that there were at least some Principals with whom she did not have direct contact while employed by Delmarva. The existence, nature and extent of those relationships, along with the circumstances surrounding her termination and subsequent hiring by MicroLambda, obviously cannot be found in the language of the restrictive covenant.

For these reasons, the solicitation clause is not overbroad on its face, and thus does not provide a basis for dismissal of Count I.

### ii. *The competition clause*

Doolin argues that the competition clause is unreasonable on its face for two reasons. First, she argues the covenant imposes an undue hardship because it applies to too many potential employers, since it precludes her from working for any MROs that represent companies

8

that compete with Delmarva's Principals, not just those MROs that represent companies that compete with those Principals with which Doolin dealt while employed at Delmarva. Second, she argues that the geographic area covered by the covenant—most of three states and the District of Columbia—is too large to withstand scrutiny.

Whether the competition clause is overbroad on its face is a close question. Because the case is proceeding to discovery in any event, the reasonableness of the clause will be addressed after the facts are further developed. Each of the *Ruhl* factors—the necessity of the restriction for protecting the employer's business, the hardship for the employee, and the public interest—often turns on facts and circumstances outside the four corners of the restrictive covenant at issue. Accordingly, the competition clause will not be held unenforceable on its face.

### B. *Defamation or disparagement as a breach of the covenant*

Delmarva's complaint alleges that Doolin breached the restrictive covenant in several ways, including by "defaming Delmarva to its Principal, Natel Engineering, and to Natel and Delmarva's customer at Northrop Grumman Corporation in Linthicum, Maryland, and, thereby interfering with Delmarva's relationship with that Principal." (Am. Compl. ¶11.) Doolin argues that this allegation, even if true, would not constitute a breach of the restrictive covenant because it does not include an "anti-defamation or non-disparagement clause." (Def.'s Mem. at 6.) The restrictive covenant, however, does prohibit Doolin from "directly or indirectly . . . interfer[ing] with, or attempt[ing] to divert, sell or market for any Principal." (Am. Compl., Ex. A.) If Delmarva succeeds in showing, for example, that Doolin defamed Delmarva to Natel Engineering and/or its customer at Northrop Grumman, and that her alleged defamatory comments "interfere[d] with" Delmarva's relationship with Natel Engineering or "divert[ed]" Principals away from Delmarva, those facts could establish that Doolin breached the

9

Employment Agreement, and Delmarva would be entitled to relief. Therefore, Doolin is not entitled to dismissal of Count I on this basis.

### C. Employment by MicroLambda as a breach of the covenant

Delmarva's complaint also alleges that Doolin breached the covenant by "working for MicroLambda which is a company engaged in manufacturers' representation, in the Territory, of products that are competitive to Delmarva's Principals and thereby interfering with and attempting to divert Delmarva' [sic] Principals." (Am. Compl. ¶11.) The competition clause bars Doolin from "accept[ing] or receiv[ing] compensation of any kind" from an MRO that competes with Delmarva. Doolin argues that the allegation, even if true, would not constitute a breach because (1) "working for MicroLambda" is not the same as "accept[ing] or receiv[ing] compensation" from MicroLambda, and (2) Delmarva's complaint does not specifically allege that MicroLambda was in competition with Delmarva "at the time of termination," as required by the restrictive covenant. (Def.'s Mem. at 6-9.) Neither of these arguments has merit. Delmarva met its burden of pleading by alleging that Doolin violated the agreement by "working" for MicroLambda, despite the fact that the covenant specifically refers to "accept[ing] or receiv[ing] compensation," for the simple reason that in ordinary use, the word "works" connotes employment for compensation. On the second point, while the complaint did not include the words "at the time of termination," they are clearly implied by the allegation that after leaving Delmarva, Doolin became affiliated with MicroLambda, in violation of the restrictive covenant. The allegation that MicroLambda represents "products that are competitive to Delmarva's Principals" (Am. Compl. ¶11) is sufficient to allege that Doolin worked for an MRO that represents "products that are competitive to Delmarva's Principals at the time of termination." (*Id.*, Ex. A.)

### D. Sufficiency of the remaining allegations

Finally, Doolin argues that the claim for breach of contract should be dismissed because the remaining alleged breaches—that Doolin "disclos[ed] Confidential information" and commited "other acts" (Am. Compl. ¶11)—are too conclusory. (Def.'s Mem. at 9-12.) The court need not address whether these allegations would be independently sufficient, because the other alleged breaches of the restrictive covenant discussed above are sufficiently pled to state a claim for breach of contract.

For these reasons, the allegations in Delmarva's complaint are sufficient to state a claim for breach of contract on which relief can be granted. Doolin's motion to dismiss Count I will be denied.

## III. Defamation (Count II)

To recover for defamation under Maryland law, a plaintiff must establish that: "(1) the defendant made a defamatory statement regarding the plaintiff to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm thereby." *Southern Volkswagen, Inc. v. Centrix Fin'l, LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005). Delmarva's amended complaint alleges that Doolin defamed Delmarva by "falsely accusing Delmarva of engaging in illegal and inappropriate business activities" in communications to one of Delmarva's Principals, Natel Engineering, and to Natel and Delmarva's customer at Northrop Grumman Corporation." (Am. Compl. ¶ 12.) Later, when the amended complaint restates the allegation, it describes the alleged statements as having falsely asserted that Delmarva "engaged in or planned to engage in illegal and improper activities *and/or treated her unfairly*." (Am. Compl. at ¶28) (emphasis added). Doolin argues that the amended

complaint does not properly allege that she made a "defamatory statement" because by using the conjunction "and/or" Delmarva does not state "that Doolin definitely published statements to third parties that Delmarva was engaged in or planned illegal activities." (Def.'s Mem. at 22.)

A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett*, 602 A.2d 1191, 1210 (1992). A statement accusing someone of having committed a crime is defamatory so long as, when considered in context, it leaves a reader with "the impression that the writer was seriously maintaining [that the person being described] committed the crime," rather than using "mere rhetorical hyperbole." *Id.* at 1211-12 (citing *Milkovich v. Lorian Journal Co.*, 497 U.S. 1, 21 (1990); *see also Shapiro v. Massengill*, 661 A.2d 202, 218-19 (Md. Ct. Spec. App. 1995) (holding that statements that the plaintiff had been the "target" of a criminal investigation could be considered defamatory); *Southern Volkswagen*, 357 F. Supp. 2d at 843 ("It is without question that labeling an entity a 'fraud' is a defamatory statement.").

When read in the light most favorable to the plaintiff, the amended complaint properly alleges that Doolin made a "defamatory statement" concerning Delmarva. Notwithstanding Delmarva's use of the imprecise term "and/or," the allegation is sufficiently clear. Delmarva alleges that Doolin communicated to persons at Natel Engineering and Northrop Grumman Corporation that Delmarva had engaged in or planned to engage in illegal conduct. Moreover, while Doolin is correct that the accusation that Delmarva "treated her unfairly," standing alone, would not rise to the level of exposing her to "public scorn, hatred, contempt or ridicule," *Batson v. Shiflett*, 602 A.2d at 1210, the allegations taken as a whole and read in the light most favorable to Delmarva are sufficient to allege that Doolin made a "defamatory statement." Thus the

12

amended complaint states a plausible claim for relief for defamation. Doolin's motion to dismiss Count II will be denied.

## IV. Claims for interference with business relations

Under Maryland law, there are two types of tort actions related to interference with business relations. The first, intentional interference with contractual relations, applies where a defendant is alleged to have induced the breach of an existing contract. The second, tortious interference with economic relations (also known as intentional interference with prospective advantage) applies to the malicious or wrongful interference with economic relations, irrespective of a breach of contract. *See Natural Design, Inc. v. Rouse Co.*, 485 A.2d. 663, 674 (Md. 1984) (tracing the historical development of the two torts). Delmarva alleges that Doolin committed each of these torts. Doolin has moved to dismiss each for failure to state a claim upon relief can be granted.

### A. *Intentional interference with contractual relations (Count V)*

To establish a *prima facie* case of intentional interference with contract, a plaintiff must show: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional interference with the contract; (4) breach of the contract by the third party; and (5) resulting damages to the plaintiff. *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991).

Doolin asserts that Delmarva has failed to state a "plausible claim for relief," *Iqbal*, 129 S. Ct. at 1950, because Delmarva does not allege (a) that Natel Engineering or any other Principals had an existing contract with Delmarva or (b) if such a contract or contracts existed, that Natel Engineering or any Principals breached those contracts. Doolin is correct that the tort of intentional interference with contract requires the existence, and breach, of a contract; where

13

no such contract exists, the applicable tort is interference with economic relations. Doolin is not correct, however, that Delmarva's complaint fails to state a claim for intentional interference with contractual relations.

Delmarva alleges that Delmarva "maintains contractual relations with its Principals," and that one such "contractual relationship" was with Natel Engineering (Am. Compl. ¶49), which it referred to later in the complaint as "a contract." (*Id*. ¶50.) Delmarva further alleges that Doolin "knew" that Natel Engineering was one such Principal, among others, with "a contract" with Delmarva, (*id*.) and intentionally interfered with the contracts when she "defamed Delmarva to Natel Engineering, and others," intending to induce Natel Engineering and other Principals to "cease doing business with Delmarva." (*Id*. ¶ 51.) Finally, Delmarva alleges that Natel Engineering and other Principals "have ceased doing business with Delmarva, or have reduced the amount of business that they do with Delmarva." While Doolin argues that "ceas[ing] doing business" and "reduc[ing] the amount of business" do not constitute "breach of the contract by the third party," the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra*, 120 F.3d at 474. Here, the clear logical implication of Delmarva's complaint, taken in the light most favorable to the plaintiff, is that Delmarva held a contract (or multiple contracts) with Natel Engineering and other Principals, and Doolin's allegedly defamatory statements induced those Principals to breach those contracts. Of course, if through discovery it becomes apparent, for example, that no such ongoing contracts existed between Delmarva and Natel Engineering, or that Doolin's conduct did not induce the breach of those contracts, Doolin may move at a later date for summary judgment on Count V. At this stage, however, Delmarva

has stated a plausible claim for intentional interference with contractual relations. Doolin's motion to dismiss Count V will be denied.

### B. *Tortious interference with economic relations (Count III)*

To establish tortious interference with economic relations, a plaintiff must show "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Natural Design*, 485 A.2d. at 675 (internal quotation marks and citations omitted). The tort requires conduct "that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994). "Wrongful or unlawful acts include common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Id.* (quoting *K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 166, 557 A.2d 965 (1989)).

In support of this claim, Delmarva alleges that Doolin "began to contact known customers and Principals of Delmarva and others, and to verbally, and in writing, defame Delmarva by falsely asserting that Delmarva engaged in illegal, criminal and / or improper acts in its business dealings and in its actions toward Doolin." (Am. Compl. ¶36.) It further alleges that these defamatory statements were made "intentionally and willfully," "with actual malice," "were calculated to cause damage to Delmarva's income, its business reputation, and its business relationships," and caused actual damage as a result of Doolin's defamation. (*Id*. ¶37-38.)

Doolin argues that these allegations do not state a plausible claim for relief because they fail to specify "what the statements were[,] . . . to whom the statements were allegedly made, when they were made or in what context they were made," or whether the statements accused Delmarva of criminal or illegal acts, or merely "improper acts." (Def.'s Mem. at 23.) Such factual details, however, are not necessary for Delmarva to have properly alleged tortious interference with economic relations. If Delmarva succeeds in proving that Doolin did, in fact, contact Delmarva's Principals, falsely assert to those Principals that Delmarva was engaged in illegal or criminal acts in its business dealings, and do so with an unlawful purpose, it will have proven the elements of the tort. These factual allegations are sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to put Doolin on notice of the claims against her. For these reasons, Doolin's motion to dismiss Count III will be denied.

## V.     Unjust enrichment (Count IV)

In addition to the breach of contract and tort claims discussed above, Delmarva's amended complaint includes a claim for unjust enrichment. Delmarva argues that it is entitled to restitution for unjust enrichment because it conferred on Doolin a benefit by increasing her commission percentage in exchange for agreeing to the terms of the restrictive covenant; she was unjustly enriched, Delmarva argues, because she failed to comply with the covenant while retaining the higher commissions. Doolin argues that since the unjust enrichment claim arises out of obligations imposed by an express contract, unjust enrichment is not a proper alternative theory of recovery. Doolin's motion to dismiss this count will be granted.

Under Maryland law, "[t]he general rule is that no quasi-contractual claim [such as a claim for unjust enrichment] can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Cnty. Comm'rs of Caroline*

16

*Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000). The Maryland Court of Appeals explains the rationale for the rule, which has been "followed universally in both federal and state courts," *id.* at 607, *see also id.* at 607-08, 607 n.8 (collecting cases), as follows:

> When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

*Id.* (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984)). This rule is closely adhered to, and exceptions have been granted "only when there is evidence of fraud or bad faith,[4] there has been a breach of contract or a mutual recission of the contract, when recission is warranted, or when the express contract does not fully address a subject matter." *Id.* at 609 (citations omitted).

Here, Count IV, claiming unjust enrichment, is expressly premised on Doolin's employment agreement with Delmarva. It alleges that Delmarva "conferred a benefit upon Doolin by increasing her commission percentage by ten percent (10%) in exchange for Doolin's agreement to the Restrictive Covenants," and that this benefit "was recognized as compensation for the strict adherence to the terms and conditions contained in the Agreement." (Am. Compl. ¶42-43.) In addition, Delmarva has raised a breach of contract claim based on the same factual allegations. The unjust enrichment claim, therefore, falls squarely within the "general rule" that a plaintiff may not recover for unjust enrichment "when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 607.

---

[4] This exception is triggered only when fraud or bad faith exists "in the formation of the contract that would otherwise govern." *See Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002) (internal references omitted). There is no allegation of such fraud or bad faith here.

17

Moreover, Delmarva has not alleged that any of the exceptions applies. Rather, it argues that Count IV should go forward because "when the terms of the contract . . . are disputed, courts permit alternative pleadings." (Pl.'s Mem. at 22 (citing *Raceredi Motorsports, LLC v. Dart Machinery, LTD.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009).) *Raceredi Motorsports*, however, involved an oral contract, nearly all the material terms of which were in dispute. 640 F. Supp. 2d at 663. Here, none of the terms of Doolin's employment agreement are in dispute. While Doolin contests the enforceability of the restrictive covenant, she admits the enforceability of the remainder of the contract. Therefore, this is not a case like *Mangione v. Braverman*, 199 A.2d 225 (Md. 1964), where the court permitted *quantum meruit* recovery despite the existence of an express contract, because the entire contract in *Mangione* was unenforceable by virtue of the statute of frauds. *Id.* at 227. Here, there is no dispute that at least part of the Doolin agreement is valid and enforceable.

For these reasons, Doolin's motion to dismiss the claim for unjust enrichment will be granted.

## **CONCLUSION**

For the foregoing reasons, Delmarva has stated claims on which relief can be granted on all counts except Count IV. Defendant's motion to dismiss Count IV will be granted; the motion to dismiss the remaining counts will be denied. A separate order follows.

September 29, 2010                                      /s/
Date                                                                                              Catherine C. Blake
                                                                                                United States District Judge